**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.

No. 98-4742

SCOTT DEWAYNE YOUNG, a/k/a Scott
Dewayne Hunter,
Defendant-Appellant.

Appeal from the United States District Court
for the District of Maryland, at Greenbelt.
Alexander Williams, Jr., District Judge.
(CR-97-477)

Argued: September 24, 1999

Decided: December 16, 1999

Before MURNAGHAN and NIEMEYER, Circuit Judges,
and MAGILL, Senior Circuit Judge of the
United States Court of Appeals for the Eighth Circuit,
sitting by designation.

_____

Affirmed by unpublished opinion. Judge Niemeyer wrote the opinion,
in which Judge Murnaghan and Senior Judge Magill joined.

_____

**COUNSEL**

**ARGUED:** Martin Gregory Bahl, OFFICE OF THE FEDERAL
PUBLIC DEFENDER, Greenbelt, Maryland, for Appellant. Bryan
Edwin Foreman, Assistant United States Attorney, UNITED STATES

ATTORNEY'S OFFICE, Greenbelt, Maryland, for Appellee. **ON BRIEF:** James Wyda, Federal Public Defender, Michael T. Citara-Manis, Assistant Federal Public Defender, Lauren E. Case, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Greenbelt, Maryland, for Appellant. Lynne A. Battaglia, United States Attorney, UNITED STATES ATTORNEY'S OFFICE, Greenbelt, Maryland, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

NIEMEYER, Circuit Judge:

On evidence that Scott Dewayne Young had repeatedly physically abused, threatened, and harassed his former girlfriend, Zubaidah Haamid, over the course of their relationship, a jury convicted Young for interstate stalking in violation of 18 U.S.C. § 2261A. The district court sentenced Young to 41 months imprisonment to run consecutively with an undischarged state sentence arising from similar conduct. On appeal, Young challenges (1) the sufficiency of the evidence, (2) the authority of Congress to enact the interstate stalking statute, (3) the constitutionality of the statute for vagueness, and (4) aspects of his sentence. For the reasons that follow, we affirm.

I

Young and Haamid, who were involved in an intimate relationship and together had a son, lived together on and off in Hyattsville, Maryland, for over a year. Testifying at trial that Young was physically abusive, Haamid gave details of numerous beatings she suffered at Young's hands. On various occasions, Young threw Haamid against the wall, dragged her across the floor, struck her, and violently restrained her. Haamid's friend testified that Young once hit Haamid in the mouth so hard that her teeth left imprints in her lip. Haamid

2

recounted that during these beatings Young threatened her with further violence, insulted her, and told her that he was never going to leave her alone.

After Haamid moved out of Young's apartment and ended their relationship, Young made repeated efforts to renew the relationship. When Haamid rebuffed his efforts, Young began telephoning her repeatedly -- in Haamid's estimate over 50 times on one day. He would come to her home, and, when she refused to let him in, he would enter through the window or bang and kick on her door. He would wait for her outside her apartment, near her workplace, and at the subway station. His pleas for reconciliation were often underscored with threats and rough restraint until Haamid managed to break free.

Young's behavior prompted Haamid to obtain protection orders in Maryland, where she and Young lived, and in the District of Columbia, where Haamid worked. Despite these protection orders, Young continued to harass Haamid, calling her repeatedly, confronting her near her workplace and home, pleading with her to reestablish the relationship, and threatening her when she resisted him.

The specific conduct which led to Young's conviction of interstate stalking occurred on November 17, 1997. Despite the existence at that time of the Maryland protection order prohibiting Young from contacting Haamid or coming to her home or place of employment, Young called Haamid several times on November 17, beginning at 5:30 a.m., reaching her at home and at work and declaring his intention to come to Haamid's workplace at noon. When Haamid went down at noontime to the lobby of her office building in Washington, D.C., to meet Young, she asked a coworker to accompany her to the lobby because she was afraid to meet him alone. Haamid repeatedly asked Young to leave, but he refused to do so until she accepted something he wanted to give her. Young told Haamid that he loved her and did not understand why she was treating him badly. To get Young to leave, Haamid eventually accepted a ring from Young, the same ring that she had thrown at him during a quarrel in his apartment in Maryland two weeks earlier.

On December 17, 1997, a grand jury returned a five-count indictment against Young charging him with two counts of interstate travel

to commit domestic violence in violation of 18 U.S.C. § 2261(a)(1), two counts of interstate stalking in violation of 18 U.S.C. § 2261A, and one count of interstate travel to commit acts in violation of a court ordered protective order in violation of 18 U.S.C. § 2262(a)(1). The district court dismissed two counts at the close of the government's case, and the jury returned a verdict of not guilty on two counts. Young was found guilty on one count of interstate stalking, based on the November 17, 1997 incident.

In sentencing Young, the district court increased Young's base offense level by four levels (from level 14 to level 18) pursuant to U.S.S.G. § 2A6.2(b)(1) (authorizing enhancement when the defendant's conduct is in violation of a court protection order, involves bodily injury, threatens the use of weapons, or constitutes a pattern of harassment). On Young's request for a reduction of his criminal history category, arguing that his criminal history was overstated because it consisted only of convictions involving Haamid, the judge reduced Young's criminal history category from V to IV. The court sentenced Young to 41 months imprisonment, at the low end of the resulting 41-51 month sentencing range. This appeal followed.

II

Young contends first that the evidence presented at trial was insufficient to support his conviction of interstate stalking in violation of Title 18 U.S.C. § 2261A, which provides in pertinent part:

> Whoever travels across a State line . . . with the intent to injure or harass another person, and in the course of, or as a result of, such travel places that person in reasonable fear of the death of, or serious bodily injury (as defined in section 1365(g)(3) of this title) to, that person . . . shall be punished as provided in section 2261 of this title.

Young claims that the government failed to offer sufficient evidence (1) that on November 17, 1997, he crossed a state line to visit Haamid and (2) that on that day, Haamid was in "reasonable fear of serious bodily injury."

In reviewing the sufficiency of evidence to support a conviction, we take the evidence in the light most favorable to the government and determine whether any rational trier of facts could have found the defendant guilty beyond a reasonable doubt. See , e.g., United States v. Tresvant, 677 F.2d 1018, 1021 (4th Cir. 1982).

On Young's first point, he is correct in noting that the record lacks direct evidence that Young crossed a state line on Monday, November 17, 1997, the date of the alleged interstate stalking. Even though there may not have been direct evidence that Young crossed a state line on that date, there was ample circumstantial evidence from which the jury could reasonably have concluded that Young crossed a state line on the day in question.

First, the evidence showed that Young resided in Hyattsville, Maryland, and there was no evidence or suggestion that he did not sleep at his residence the night before. To the contrary, on November 17, Young called Haamid at 5:30 a.m., presumably before he departed for work that day. Because the noontime encounter occurred in Washington, D.C., at Haamid's place of work, Young would have had to cross a state line from his residence in Maryland to the District of Columbia.

In addition, Young's supervisor at the Nixon Uniform Company, where Young worked, testified that during the period which included November 17, 1997, from Monday through Thursday, Young picked up his delivery truck in Brentwood, Maryland, early in the morning between 5:00 and 6:00 a.m., and made deliveries in the District of Columbia and northern Virginia. To get from Brentwood to Haamid's place of work, again Young would have had to cross a state line.

Finally, Haamid testified that the ring that Young was returning to her in Washington, D.C., on November 17, 1997, was the same ring that she threw at him and left with him in his apartment in Hyattsville, Maryland, two weeks earlier. Young had to cross a state line to deliver this ring that he received in Maryland to Haamid at her place of work in the District of Columbia. While the length of time that transpired between Young's receiving the ring and giving it back to Haamid might render this evidence somewhat attenuated when considered in isolation, in combination with the other evidence, it bolsters

5

the strong inference that Young crossed a state line to complete the transaction which was at the heart of the conduct of conviction.

Young also argues that the evidence was insufficient to support the jury's finding that on November 17, 1997, Haamid was placed in reasonable fear of death or serious bodily injury. "Serious bodily injury" is defined in 18 U.S.C. § 1365(g)(3) as an injury involving "(A) a substantial risk of death; (B) extreme physical pain; (C) protracted and obvious disfigurement; or (D) protracted loss or impairment of the function of a bodily member, organ, or mental faculty." While the November 17 meeting in isolation may not have revealed proof of this element, Haamid's willingness to meet Young and to accept back the ring was prompted by her fear of Young which developed from the months of violent incidents preceding November 17. Haamid testified to Young's repeated violent episodes and unrelenting threats to her safety, behavior that prompted Haamid to seek protection orders in two jurisdictions.

In short, we hold that the evidence amply supports Young's conviction of interstate stalking in violation of 18 U.S.C. § 2261A.

III

Young next contends that the charges alleging violations of the interstate stalking statute should have been dismissed because: (1) the statute unconstitutionally intrudes into an area of the law traditionally reserved to states in violation of the Tenth Amendment; (2) it infringes upon the right to travel; and (3) Congress' Commerce Clause powers do not authorize its enactment. We find these arguments without merit.

Because the interstate stalking statute contains an interstate travel requirement and prohibits the commission of a crime, its constitutionality is firmly established under existing Commerce Clause jurisprudence. See Cleveland v. United States, 329 U.S. 14, 19 (1946) (upholding Mann Act prohibiting the transportation in interstate commerce of any woman or girl for the purpose of prostitution or debauchery or for any other immoral purpose); Caminetti v. United States, 242 U.S. 470, 491 (1917) (upholding White Slave Traffic Act of 1910 making illegal inducing interstate travel of women for

6

immoral purposes); United States v. Bailey, 112 F.3d 758, 766 (4th Cir. 1997) (upholding 18 U.S.C. § 2261(a) making it illegal to travel across a state line with the intent to injure, harass, or intimidate a spouse or intimate partner and intentionally commit a crime of violence against that person). Like the statutes upheld in these cases, the interstate stalking statute requires interstate travel, "thus placing the transaction squarely in interstate commerce." Bailey, 112 F.3d at 766. And the statute requires the commission of the crime of stalking, which is not significantly different from the conduct proscribed in the statutes upheld in Cleveland, Caminetti , and Bailey.

Moreover, the interstate stalking statute does not infringe on any right to travel. A person remains free to travel from state to state but may not, consistent with the statute, do so with the intent of injuring or harassing another person and with the effect of placing that person in fear of death or serious bodily injury.

IV

We also reject Young's arguments that the interstate stalking statute is unconstitutionally vague on its face and as applied to him and that the statute violates due process by criminalizing thoughts or intentions.

It is axiomatic that "[d]ue process requires that a criminal statute provide adequate notice to a person of ordinary intelligence that his contemplated conduct is illegal, for `no man shall be held criminally responsible for conduct which he could not reasonably understand to be proscribed.'" Buckley v. Valeo, 424 U.S. 1, 77 (1976) (quoting United States v. Harriss, 347 U.S. 612, 617 (1954)). The Supreme Court has noted, however, that "vagueness challenges to statutes which do not involve First Amendment freedoms must be examined in the light of the facts of the case at hand." United States v. Mazurie, 419 U.S. 544, 550 (1975). Because Young's challenge to the interstate stalking statute does not implicate First Amendment concerns, he must contend with the rule that "[o]ne to whose conduct a statute clearly applies may not successfully challenge it for vagueness." Parker v. Levy, 417 U.S. 733, 756 (1974); United States v. Bryan, 58 F.3d 933, 942 (4th Cir. 1995), abrogated on other grounds by United States v. O'Hagan, 521 U.S. 642, 649-50 (1997).

7

In this case, Young, in violation of a court protection order, repeatedly called Haamid on November 17, 1997, crossed a state line to confront her at her workplace, and refused to leave unless she accepted a ring from him. His pattern of conduct, of which the November 17 incident was a part, featured repeated violent episodes coupled with actual injury or persistent threats to her safety and peace of mind. In this context, it was reasonable that Haamid was fearful of serious bodily injury. Young's conduct on November 17, 1997, thus fit squarely within the scope of conduct prohibited by the interstate stalking statute, and he therefore may not challenge the statute as vague. Cf. Bryan, 58 F.3d at 941-42 (holding that defendant could not challenge for vagueness provision of mail fraud statute prohibiting schemes to defraud others of their intangible right to honest services because provision clearly applied to defendant's conduct while lottery director).

Moreover, when Young contends that the statute transgresses due process limitations by punishing thoughts or intentions, he mischaracterizes the stalking statute. Mere intentions to harm or harass a person are not the essence of the statute's prohibition. Rather, to be convicted under the statute, a defendant must also trigger in the victim reasonable fear of death or serious bodily injury.

V

Finally, Young challenges aspects of his sentence. He contends that the district court erred (1) by failing to give him credit toward the sentence for his time spent in state custody, and (2) in imposing his sentence to run consecutively to his undischarged state sentence.

Under 18 U.S.C. § 3585(b)(1), a defendant "shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences . . . as a result of the offense for which the sentence was imposed." (Emphasis added). Young's state detention, however, did not result from the same conduct that comprised his interstate stalking offense. Young was detained in state custody for a probation violation based on events that occurred in June 1997, whereas the conduct that led to his federal conviction occurred in November 1997. While the conduct in June and the conduct in November were arguably a result of the

8

same pattern of conduct, time served in state custody was properly not credited toward Young's federal sentence.

Young's argument that it was error to impose his federal sentence consecutive to his state sentence is also without merit. The Sentencing Guidelines do provide that if an undischarged term of imprisonment "resulted from offense(s) that have been fully taken into account in the determination of the offense level for the instant offense, the sentence for the instant offense shall be imposed to run concurrently to the undischarged term of imprisonment." U.S.S.G.§ 5G1.3(b). But Young's state sentence was not "fully taken into account" in the sentence imposed in this case. The conduct of conviction occurred in November 1997; the conduct of state conviction occurred in June 1997. Also, in enhancing the federal sentence, the district court did not rely on the conduct of state conviction. The district court adjusted Young's sentence upward based on factors listed in U.S.S.G. § 2A6.2(b)(1), which provides that the base offense level is increased by 4 levels if the offense involved more than one of the following: "(A) the violation of a court protection order; (B) bodily injury; (C) possession, or threatened use, of a dangerous weapon; or (D) a pattern of activity involving stalking, threatening, harassing, or assaulting the same victim." The district court adjusted Young's sentence upward based on his violation of the November 3, 1997 protection order and the bodily injury sustained by Haamid in March 1997, but not on the events of the state offense which occurred in June 1997.

Finding no reversible error, we affirm the judgment of the district court.

AFFIRMED

9